GEORGE E. PRITCHETT v. JOHN I. REDICK.

FILED JUNE 19, 1901.    No. 9,912.

Commissioner's opinion, Department No. 3.

**Deed by Minor:** DISAFFIRMANCE OF CONTRACT: LIMITATION. P. pur-
chased certain real estate in the city of Omaha from E., a
minor, and conveyed the same to M. for the consideration of
$2,000. M. conveyed to R., the defendant in error, and R. conveyed
to T., who subdivided the same into seven lots and sold four
of the lots to different parties. After these several convey-
ances, the minor, who had then attained his majority, disaf-
firmed his conveyance to P. and commenced an action against
P. and those claiming under him to cancel his conveyance to P.
and all subsequent conveyances of the property, and to quiet his
title thereto. On the trial of the case, the relief prayed in his
petition was granted. Thereupon the purchasers of lots from T.
commenced actions against T. on the covenants in their deeds,
and recovered judgments for the amount paid for their lots
and interest thereon. T. thereupon demanded of R. that he
make good the covenants in his deed, and R. negotiated for
and purchased the paramount title, and caused the same to
be conveyed to the grantees of T. upon their canceling the judg-
ments they had obtained against T. R. thereupon brought an
action of covenant against M., his immediate grantor, for fail-
ure of title, and obtained judgment, but execution on the judg-
ment was returned *nulla bona*, whereupon he brought this action
against P. upon the covenants in his deed to M. *Held*, First,
that having satisfied the claims of those claiming title under
his deed to T., R. became reinvested with the covenants running
with his deed, and was entitled to maintain an action of cov-
enant against P. Second, that the deed from the minor to P.
gave P. title to the land which was good and valid up to the time
that the minor disaffirmed his deed, and that the covenants in
the deed from P. to M. were not broken when made, nor until
the minor had attained his majority and disaffirmed his con-
veyance to P. Third, that the statute of limitations did not
commence to run against this action until the minor had dis-
affirmed his conveyance to P.

ERROR from the district court for Douglas county.
Tried below before DICKINSON, J. *Affirmed upon filing of
remittitur.*

*George E. Pritchett,* for himself.

*William A. Redick, contra.*

Duffie, C.

December 29, 1875, Frances H. Englebert died intestate, leaving a husband and Francis Leon Englebert, a son, as her sole heirs at law. At the date of her death she was the owner in fee of lot 3, Gise's Addition to the city of Omaha. A mortgage existed upon said lot in favor of Max Meyer & Co. and in 1881 a suit was commenced to foreclose said mortgage. A decree was entered in that case to the effect that the mortgage was a lien upon the life estate of J. Lee Englebert, the husband of Frances H. Englebert, and the life estate was ordered sold to satisfy the debt secured by the mortgage. At the mortgage sale Max Meyer and Adolph Meyer became the purchasers, and received a sheriff's deed for the life interest for which said lot was ordered sold. The sheriff's deed was made in March, 1886. August 4, 1885, Francis Leon Englebert and his father, J. Lee Englebert, conveyed an undivided half of said lot to George E. Pritchett, the plaintiff in error, and June 21, 1886, they conveyed the other undivided half of said lot to Pritchett. This gave Pritchett paper title to the whole lot, subject to the estate for the life of J. Lee Englebert held by Max Meyer and Adolph Meyer. At the date of the two deeds above mentioned, made to Pritchett, Francis Leon Englebert was a minor, and he did not attain his majority until October 11, 1889. June 28, 1886, Pritchett and wife conveyed the lot in question to Adolph Meyer, subject to the life estate then held by them. The consideration named in the deed was $2,000. September 26, 1886, Adolph Meyer conveyed the lot to Max Meyer & Brother, and September 27, 1886, Max Meyer & Brother conveyed the lot to John I. Redick, the defendant in error, for the consideration of $3,500. February 8, 1887, Redick conveyed the lot to Benj. F. Troxell for the consideration of $5,000. The lot comprised about one acre of ground, and after conveyance to Troxell he subdivided the same into seven lots, which is known as Troxell subdivision of lot 3, Gise's Addition to Omaha. After subdividing lot 3, Troxell sold five

of the lots. All of the deeds above mentioned contain full covenants of warranty. December 12, 1888, J. Lee Engle-bert, the father, died, and November 14, 1889, within about a month after attaining his majority, Francis Leon Engle-bert commenced suit in the district court of Douglas county disaffirming his conveyance to Pritchett, and pray-ing that these deeds and all subsequent deeds affecting said property might be set aside and the title quieted in him. August 1, 1891, a decree was entered in that suit as prayed in the petition, and on appeal to the supreme court the decree was affirmed, the case being reported in 40 Nebr., 195. Soon after the decree in the district court, in favor of Francis Leon Englebert, Johnson, Trennery, Ryan and Lawton, who had each purchased from Troxell one of the lots, into which the land had been subdivided, each commenced an action against Troxell on the covenants of warranty in his deed to them, and each recovered judgment against Troxell for the amount of the consideration paid, with interest and costs. Thereupon Troxell demanded from Redick satisfaction upon the covenants of warranty in the deed made by Redick to him, and Redick opened negotiations with Francis Leon Englebert and one St. John, to whom Francis Leon Englebert had conveyed an undivided half of said lot, which resulted, May 16, 1894, in the purchase by Redick of the paramount title, he pay-ing therefor $2,500. The purchasers of lots 1, 2, 3 and 4 of the subdivision of lot 3 were still in possession under their deed from Troxell, and to prevent the title purchased from Francis Leon Englebert and St. John from vesting in the purchasers of those four lots Redick, on becoming owner of the paramount title, had it conveyed, so far as those four lots were concerned, to his son, W. A. Redick, until the grantees of those four lots should satisfy the judgment which they still held against Troxell. There-after, those lots were conveyed to the several grantees of Troxell, who satisfied their several judgments. Upon re-ceipt of the deeds, lots 5, 6 and 7 were conveyed to W. H. Lawton under the following arrangement: Lawton had

purchased lot 5 from Troxell, and had recovered judgment against him for the purchase-money and interest, amounting to $2,008.41. He refused to release this judgment unless Troxell would procure him title to all three lots, for which he would pay an additional amount of $1,000 cash. Troxell refused to do this unless Redick would cancel an unpaid purchase-money note of $750, upon which there was due at that time the sum of $1,075. This arrangement was finally made. Lawton paid $1,000 in cash to Troxell, Redick surrendering up his note, and paid the remaining $1,500 for the title. The conveyances to the several grantees of Troxell by which they were invested with the paramount title were dated as follows: October 26, 1894, lot 1 was conveyed to B. F. Troxell, and this inured to the benefit of Stevens who had brought no action; May 31, 1895, lot 2 was conveyed to Susan Cook, the assignee of the Johnson judgment; June 20, 1894, lot 3 was conveyed to John H. Trennery; January 20, 1894, lot 4 was conveyed to Ada Ryan. In November, 1894, Redick brought an action of covenant against Max Meyer and Adolph Meyer, his immediate grantors. This judgment is wholly unpaid, execution having been returned *nulla bona*. Redick thereupon brought this suit upon the covenant in the Redick's deed to Adolph Meyer, claiming to be the assignee thereof by virtue of the conveyances above set forth. On the trial, judgment was entered for the plaintiff for $2,081 and costs of suit, and this record is brought here upon petition in error, and we are asked to review the same.

It is first insisted by Pritchett that he never had title to the premises described in his deed to Meyers; that nothing passed by that deed, as he had no title to convey; that, therefore, the covenant of warranty on which the action is based was broken as soon as made, and did not pass from Meyer to Redick. It is the settled rule in this state that where no interest whatever passes from a grantor by a conveyance, the covenant contained in the deed can not run to a subsequent assignee. In such case the covenants are merely personal and not assignable at common law.

*Scott v. Twiss,* 4 Nebr., 133; *Walton v. Campbell,* 51 Nebr., 788. Pritchett took title to the premises by deed from a minor. This was not a void deed, and until disaffirmed by the minor, passed to Pritchett a good contract. Had the minor taken no steps to disaffirm his deed after attaining his majority, it would have vested a complete and perfect title to the land in Pritchett and his grantors, which no one but the minor himself could question, and he is allowed only a reasonable time after attaining his majority to do so. This very question was before the court in *Troxell v. Stevens,* 57 Nebr., 329, and it is there said at page 336: "The covenant in Troxell's deed was not broken when made. He at that time possessed title to the lot, which was perfect until Englebert disaffirmed his conveyance to Pritchett, which act of disaffirmance was subsequent to the making of the deed by Troxel to Maulsby." This language relates to the same deed which the plaintiff in error now insists conveyed to him no title, and gave him no interest which he could convey by his deed to Meyer. That decision is decisive of the question and it need not be further considered.

It is next insisted by the plaintiff in error that the Englebert deeds were never delivered to him, a⁓1 that without delivery the deeds could pass no title. 1./ some means the deeds found their way to the office of the recorder of deeds and were recorded. Pritchett evidently claimed title through the deeds, as it can not be presumed that he would knowingly convey land to which he had no title, and accept a large sum of money in payment from his grantee. Such an act would not only be against good morals, but in violation of our Criminal Code. The argument by which it is sought to show that the deeds were never delivered is to this effect: Pritchett never had any direct dealing with the minor relating to his purchase of this land; all his negotiations and correspondence were with the father, J. Lee Englebert, and the deeds were received from him through the mail, the two Engleberts being residents of Des Moines, Iowa, at the time. It is said

that the authorities are all in accord upon the proposition that an infant can not appoint an attorney, and that the appointment of J. Lee Englebert by the son to make delivery of the deeds was beyond the power of the minor to make, and that the appointment being void, the delivery under the appointment is also void. This seems to us to be begging the question. There is no evidence before us as to who mailed the letter containing the deeds. Why should we assume that it was the father and not the son who mailed this letter, or why are we driven to presumption at all? Pritchett's testimony is to the effect that he secured these deeds from the son through the negotiations and correspondence had with the father alone. This being so, it is too plain for argument that whatever was done by the father in procuring the deeds was done as agent for Pritchett, and a delivery of the deeds by the son to his father for delivery to Pritchett would be a delivery to Pritchett's agent, and not to an agent of the minor.

It is further urged, by the plaintiff in error, that there was no eviction under the paramount title, and that until evicted, no action can be maintained upon the covenants of the deed. As shown in the statement heretofore made, the parties purchasing from Troxell brought action against him on his covenant for title and obtained judgment. He then called upon Redick to make good the title, and Redick negotiated for and purchased the paramount title, taking a deed to four of the lots into which the tract had been divided, in the name of his son W. A. Redick, a stranger to the title, in order that the title so bought in might not inure to the benefit of Troxell's grantees until they satisfied the several judgments they had obtained against him. They canceled their judgments and accepted conveyance of the paramount title in satisfaction. This in law constituted an eviction. The paramount title was established by decree of the court in an action in which they, as well as Pritchett, were parties defendant; that decree was affirmed upon appeal to this court. The grantees of Troxell then accepted the paramount title bought in by John I.

Redick, the grantor of Troxell, in satisfaction of their judgment against him. Here was a clear recognition of the paramount title, and buying it in is, in legal effect, an eviction under it. *Cheney v. Straube,* 35 Nebr., 521.

Another defense urged is the statute of limitations. As we have already seen, the deeds from Francis Leon Englebert to Pritchett, although voidable, conveyed title to Pritchett, which was good until Englebert disaffirmed his deeds. The covenant of warranty contained in the deed of the plaintiff in error to Adolph Meyer was not broken when made, nor until young Englebert elected to disaffirm his conveyance to Pritchett. This disaffirmance was not until the year 1888 or 1889, while this action was commenced in February, 1895. The statute has not run against the action.

The court directed the jury to allow interest from May 19, 1894, on whatever amount they found due the plaintiff. Only $750 of the amount paid for the outstanding title was paid in May, 1894. It is conceded that interest to the amount of $15.55 was embraced in the verdict of the jury, which, under the theory upon which the case was tried by the district court, the plaintiff is not entitled to recover. The defendant in error insists that he should have been allowed the full consideration paid to Pritchett for the lot, with interest at seven per cent. from the date of payment, and that he should not, therefore, be required to remit any amount on account of excessive interest allowed. Whether the court adopted the proper measure of damage is not now in question, as the plaintiff has made no complaint by way of appealing from its ruling. Having acquiesced in the rule adopted by the trial court, we think the defendant in error must be limited in his recovery to the amount which a proper computation under that rule will allow.

Relating to the complaint that the defendant in error went outside the record in an unfair way in his argument to the jury, we do not think that prejudicial error is shown. We have read the statements to which objection was taken

with care, and while some of them may have encroached upon the proper rule to be observed in the argument of a case, a great many of them were inferences drawn from the testimony offered and which were perfectly proper.

We recommend that the defendant in error be required to remit from the judgment the sum of $15.55, and that the judgment be affirmed.

ALBERT and AMES, CC., concur.

By the Court: For the reasons stated in the foregoing opinion it is ordered that the judgment of the district court be reversed unless the defendant in error, within thirty days from the filing of this opinion, remit from the judgment the sum of $15.55; and it is further ordered that if said defendant in error remit said $15.55 as aforesaid, then the judgment of the district herein shall be, and is by this order, affirmed.

JUDGMENT ACCORDINGLY.